DELIA A. O'RIORDEN, trustee, petitioner for partition.

Suffolk.     January 11, 1923. — April 12, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Partition,* Compensation of commissioners.

The Probate Court should not regulate the compensation to be paid to commissioners appointed by it under G. L. c. 241, § 12, to make partition of real estate upon the basis of a fixed compensation upon the value and amount of property of which partition is made, but should allow to them as compensation such an amount as would be reasonable for the services required of and rendered by a person of ordinary ability and competent for such duties and services.

Three commissioners, appointed by the Probate Court under G. L. c. 241, § 12, to make partition among four tenants in common of sixty-six parcels of real estate of the aggregate value of $600,000, which "ran the gamut from cheap lots and shabby buildings to high class expensive apartment houses," after several informal meetings, were engaged over a period of four hundred and fifteen days on approximately two hundred and forty-eight days either singly, or collectively in conferences between themselves or with the tenants in common and their counsel, and in the preparation of their report as well as supervising the numerous details of the partition, which included a careful examination of the property with estimates of value and the preparation of plans. In their report they asked for an allowance of $30,000 for their services. The allowance was contested by the parties to the proceedings. The Probate Court made the allowances requested and the parties appealed. This court, after consideration of the entire record including all the evidence at the hearing, and giving due weight to the decision of the judge of the Probate Court, *held,* that, in the circumstances only $18,000 should be allowed for the commissioners' services.

PETITION, filed in the Probate Court for the county of Suffolk on April 6, 1920, and afterwards amended, by Delia A. O'Riorden, trustee under the will of Jeremiah P. O'Riorden, for partition of certain parcels of real estate in Suffolk County, to one undivided fourth part of which she alleged she was entitled; also a

PETITION, filed in the same court on June 13, 1921, by the same petitioner for a partition of certain parcels of real estate in Brookline in the county of Norfolk.

By order of *Prest,* J., a decree was entered under each petition by consent of the parties appointing Alfred V. Lincoln, George R. Grantham and Charles H. Morris commissioners to make partition. The commissioners filed a report containing the following closing paragraph:

"Our expenses and charges are as follows:

| | | |
|---|---|---|
| F. J. Barnard & Company | $14.72 | |
| Irving L. Jameson | 50.00 | |
| Mary R. Knowlton | 706.16 | |
| David A. Hincks | 248.75 | |
| Henry C. Mildram | 540.00 | |
| Modern Blue Print Co. | 26.58 | |
| Charles A. Pearson | 383.00 | |
| Timothy J. Sullivan | 150.00 | |
| Paul J. Weber | 517.20 | |
| Incidental Expenses | 62.84 | |
| Alfred V. Lincoln | 10,000.00 | |
| George R. Grantham | 10,000.00 | |
| Charles H. Morris | 10,000.00 " | |

The report was heard by *Prest,* J., a stenographer having been appointed under G. L. c. 215, § 18, to take the evidence. By order of the judge, a decree was entered accepting the report, confirming and establishing the partition, assigning and setting off the premises there described to the several parties therein named and allowing to the commissioners for expenses and charges the sum of $32,699.25. The parties requested the judge under G. L. c. 215, § 11, to report the material facts found by him. Among other facts reported by the judge were the following:

"This case came before me upon the question of confirming the report of the commissioners appointed by this court to make physical partition of certain real estate owned by Delia A.

O'Riorden, trustee, and others, as tenants in common. At the hearing no objections were made to the report of the commissioners as to the division of the property, and no real objection was made to the actual expenses incurred by the commissioners but only as to the charges of the commissioners for their services.

"A petition for partition of said real estate was filed April 6, 1920, and counsel for the parties in interest suggested the names of two commissioners, and, on May 7, 1920, the court by decree appointed the two commissioners so suggested and one other to make said partition.

"On June 2, 1921, after considerable work had been done by the commissioners, a petition to amend the above petition because of inaccurate descriptions was filed and allowed on that date.

"On June 13, 1921, a petition was filed for partition of certain parcels of real estate omitted in the first petition and the same commissioners were appointed by decree of June 23, 1921.

"There were sixty-six parcels of real estate to be physically divided; fifty-seven scattered about in Charlestown and nine in Brookline, aggregating in value $600,000. These parcels ran the gamut from cheap lots and shabby buildings to high class expensive apartment houses.

"The commissioners personally examined each parcel and determined the value thereof, and, finally, after spending as commissioners a minimum of two hundred working days — some of the commissioners spent more time than that — they made physical partition of all of said parcels, and all the parties in interest accepted the division so made, and assented to the commissioners' report except as to the charges for services.

"The commissioners were so self-contained and efficient that they hired no experts and no counsel. Their report is practically perfect. Their task was inherently difficult and made more difficult by various differences between the parties in interest. The charges for services and expenses are reasonable considering all the details and elements that entered into this complicated case, which fully appear in the report of the commissioners and the evidence taken by the court.

"I made a decree confirming the report of the commissioners and allowing their charges and expenses in the sums set forth in their report."

Garrett J. O'Riorden and Agnes C. Taff, individually and as trustees under the will of Michael S. O'Riorden and Delia A. O'Riorden, trustee under the will of Jeremiah P. O'Riorden, appealed.

*C. A. McDonough & John R. Murphy*, for the appellants.

*J. L. Hall*, (*C. H. Morris* with him,) for the commissioners, appellees.

BRALEY, J. The commissioners were appointed May 7, 1920, and June 23, 1921, under St. 1917, c. 279, § 12, now G. L. c. 241, § 12, to make partition of sixty-six parcels of real estate "aggregating in value $600,000," which "ran the gamut from cheap lots and shabby buildings to high class expensive apartment houses." The commissioners having made partition filed their report, to which the appellants while not objecting to the valuations of the parcels, or of the division, or to the expenses incurred in making partition, contend, that the sum of $30,000 awarded for services which under the statute they must pay, is excessive. St. 1917, c. 297, §§ 17, 23. See *Potter* v. *Hazard*, 11 Allen, 187. The evidence was taken by a commissioner, and at the request of the appellants the judge made certain findings of fact, which are open for revision on the appeal. *Martell* v. *Dorey*, 235 Mass. 35, 40, *Danforth* v. *Chandler*, 237 Mass. 518, and cases cited. The commissioners after several informal meetings to consider the nature of the property, and to discuss the mode of procedure, held their first formal meeting June 9, 1920, and from that date to August 19, 1921, inclusive, on approximately two hundred and forty-eight days, they were engaged either singly, or collectively in conferences between themselves, or with the heirs and their counsel, and in the preparation of their report as well as supervising the numerous details of the partition, which included a careful examination of the property with estimates of value and the preparation of plans. While in some instances perplexing and difficult questions had to be carefully considered, they were satisfactorily adjusted without the employment of experts or counsel. The record also states that after August 19 two of the commissioners, the third having died, rendered services which are not included in their bill for services as shown in the commissioners' report. But even if one of the commissioners whose evidence was not contradicted, testified that he "actually spent about six to seven

weeks on the report, worked early and late," which necessarily was voluminous, and "We have worked until nine and half past nine, after working about all day. Sometimes we would start at ten in the morning and work until twelve or half past twelve, and come back in the afternoon, and work again at night, "the number of hours actually spent at all the meetings and conferences does not appear, nor can it be inferred that either of them wholly relinquished his occupation or practice of his profession, and devoted himself exclusively to the performance of his duties as commissioner. The commissioners nevertheless are entitled to reasonable charges for their services, to be determined by the court. St. 1917, c. 279, § 23. G. L. c. 241, § 22. It was said in *Barrell* v. *Joy*, 16 Mass. 221, 229, where the compensation of a trustee was considered, "We know of no better rule to guide our discretion . . . than the usage which exists among merchants, factors, and others, who undertake to manage the interests and concerns of others; and . . . the highest rate, at which those services are paid for, ought to be allowed . . .," and five per cent on the gross amount of all property which had come into his hands was allowed for his care and distribution of it. See *Gibson* v. *Crehore*, 5 Pick. 146, 161; *Tucker* v. *Buffam*, 16 Pick. 46, 51. Where a trust is created which contemplates the performance of services not ordinarily required of a trustee, his compensation may in the court's discretion be increased accordingly. *Turnbull* v. *Pomeroy*, 140 Mass. 117, 118. See *Blake* v. *Pegram*, 101 Mass. 592, 600; *May* v. *May*, 109 Mass. 252, 258; *Loring* v. *Wise*, 226 Mass. 231, 235. A trustee, executor, administrator, guardian or conservator "shall be allowed his reasonable expenses incurred in the execution of his trust," and he is to receive such compensation as the court may allow. R. L. c. 150, § 14. G. L. c. 206, § 16. But even if it properly may be estimated on the basis of a commission, the compensation must be reasonable "under all the circumstances of the case." *Urann* v. *Coates*, 117 Mass. 41, 44. The commissioners however do not come within the classification of the statute; nor of referees as in *Russell* v. *Page*, 147 Mass. 282, where it was held that upon acceptance of the award they could recover in an action at law their reasonable fees from the parties to the submission; nor do they seek compensation where no report has been accepted and partition made, and their

charges and expenses have not been determined by the court of probate, as in *Potter* v. *Hazard*, 11 Allen, 187. While proposed by the parties, they were selected and appointed by the court, and acted under its authority and decrees. The duties with which they were charged are very closely analogous to those of a receiver to marshal assets and make distribution among creditors; and their report has been accepted, partition made, and their compensation determined. It was said in *Grant* v. *Bryant*, 101 Mass. 567, 570, "The court does not regulate the compensation of its officers upon the basis of a fixed compensation upon the amount of money passing through their hands, but allows them such an amount as would be reasonable for the services required of and rendered by a person of ordinary ability, and competent for such duties and services." The case at bar seems to us to come within the application of this practical rule, and after full consideration of all the circumstances, and giving due weight to the decision of the judge, we are of opinion that the allowance should be reduced to $18,000. *Frost* v. *Belmont*, 6 Allen, 152, 165. It follows that the decree should be modified accordingly, and as thus modified it is

*Affirmed.*